Hillsborough,
No. 4248.

JOSEPHINE C. PAINE *v.* HAMPTON BEACH IMPROVEMENT CO.

SAME *v.* ARTHUR ROY & *a.*, d/b/a ROY'S SUPERMARKET.

Argued November 5, 1953.

Decided November 30, 1953.

*Sullivan & Gregg* (*Mr. Sullivan* orally), for the plaintiff.

*Devine & Millimet* (*Mr. Millimet* orally), for the defendant company.

*Ernest R. D'Amours, Murchie & Cofran* and *Paul A. Rinden* (*Mr. Rinden* orally), for the defendants Roy.

DUNCAN, J. In *White* v. *Suncook Mills*, 91 N. H. 92, the plaintiff sought to recover for personal injuries alleged to have been sustained because of the defendant's negligent maintenance of a structure in close proximity to a public highway. There was evidence that in using the public highway the plaintiff fell from a retaining wall at the top of a banking on the defendant's land, adjoining the highway. The question of the defendant's liability was considered "upon the assumption that the retaining wall [was] erected . . . prior to the establishment of the highway." *Id.,* 95. In setting aside an order of nonsuit, this court held that the evidence furnished "an adequate basis for a conclusion that the defendant was at fault" (*p.* 94) upon the authority of *Chickering* v. *Thompson,* 76 N. H. 311, and the principle set forth in 2 Restatement, Torts, s. 368, as follows: "A possessor of land who creates or maintains thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them." Maintenance of the retaining wall so close to the street after it became a public highway as to endanger travelers thereon was declared to be a public nuisance. *Id.,* 96, 97.

The cases now before us are not distinguishable from *White* v. *Suncook Mills, supra,* and we consider it to be controlling. In the view of the evidence which the defendants consider most favorable to them, the easterly side line of the leased land upon which the cement areaway was located, was coterminous with the westerly sideline of the sidewalk. Although it appears to be undisputed that the step or "drop off" was created by the action of the town in

raising the level of the sidewalk, the defendants are not to be relieved of liability on that account. A "new relationship between the defendant and the public was created and structures which had been lawfully maintained up to that time by the defendant on its own land might, in view of the changed situation, take on the character of nuisances." *White* v. *Suncook Mills, supra,* 95. "As against the defendant the city had the right to make a level sidewalk, although by so doing it made precautions on the defendant's part necessary in order to prevent a nuisance." *Holyoke* v. *Hadley Co.,* 174 Mass. 424, 427. See also, *Hood* v. *Nashua,* 91 N. H. 98. Language used in *Shea* v. *Railroad,* 88 N. H. 462, relied upon by the defendants in these cases, which might be thought inconsistent with this view, is to be considered in the light of the peculiar facts of that case, as pointed out in the *White* case (*p.* 97), and is not decisive here.

The defendants seek to distinguish the *White* case upon the ground that the risk in that case arose from a pre-existing "excavation" or "grease-pit" on land adjoining the public way, rather than from elevation of the way above the adjoining land; and again because the difference in the elevations involved in these cases was slight by comparison, so that "the difference of degree becomes one of kind." These differences cannot be considered to furnish a valid basis for distinction. In *Jutras* v. *Satters,* 96 N. H. 300, a difference of seven-eighths of an inch in the level of a sidewalk and that of a store entrance was held to furnish a basis for liability. The argument in the cases before us, that any danger which was presented resulted from the action of the town in raising the sidewalk and therefore the rule of *White* v. *Suncook Mills* should not apply, ignores the basis for the rule. In the *White* case the "new relationship" between the parties arose when the highway was laid out beside the defendant's land. Similarly, in this case a new relationship arose when the walk already beside the defendants' land was elevated. In each instance the risk to travelers upon the public way arose from the action of the town. The nature of the action taken may not have been identical, but the obligation which was thereby cast upon the adjoining landowner is not to be distinguished.

The case of *Abrahams* v. *Zisman,* 293 Mass. 375, represents the peculiar Massachusetts rule. *Lioni* v. *Marr,* 320 Mass. 17, and cases cited. It is inconsistent with the established law of this jurisdiction and has been criticized on principle. Note 27 B. U.

L. Rev. 256. The early case of *Watson* v. *Webb*, 28 Wash. 580, stands no better as authority here.

The defendants' further argument that no duty should be imposed upon them "to make safe a sidewalk . . . on adjoining premises" misconceives the plaintiff's claim, since the plaintiff asserts no defect in the sidewalk. Her claim is not that the walk was improperly constructed but that the defendants failed to take reasonable precaution to avoid injury to her by reason of the difference in the levels of the walk maintained by the town and the cement areaway maintained by the defendants. In a similar way the defendants urge that even if they as lessees of the abutting land might have a duty to travelers upon the sidewalk, there was no evidence that the existence of the step from the walk involved any unreasonable risk of injury, citing *Abell* v. *Company*, 95 N. H. 439, 441, 442. The step was not shown to be of improper height or construction (*Berquist* v. *Company*, 91 N. H. 428), it is said, and if "expert testimony of a dangerous condition may not be essential . . . certainly some testimony is!"

The dangerous condition which the plaintiff's evidence tended to establish did not arise from the mere existence of the step. It lay in the juxtaposition of two different levels, alike in color, texture and material, so that the plaintiff "figured it was level"; and in the fact that this condition occurred at the side of the walk away from the street, which south of the lot was bordered by land at a higher rather than a lower level. In short, the plaintiff complained not of a defective step, but of a deceptive and unexpected difference in levels. See *Fisher* v. *Railroad*, 75 N. H. 184. This was evidence of a danger (*Touhy* v. *Owl Drug Co.*, 6 Cal. App. (2d) 64), which the jury was competent to understand without expert testimony and from "their own observation and experience of the facts of life." *Jutras* v. *Satters*, 96 N. H. 300, 302, and cases cited.

In the *Jutras* case, it is true, the plaintiff was an invitee, while in this case it was agreed that she was not. But any difference in the nature of the resulting duty does not affect the similarity of the risks which gave rise to the duty. In each case the evidence was sufficient to permit a jury to comprehend the risk involved.

Nor may the defendants avoid responsibility upon the supposition that the plaintiff was a trespasser, for it is "well settled in this jurisdiction that an involuntary or accidental entry upon the

land of another is not a trespass. *Puchlopek* v. *Company*, 82 N. H. 440." *White* v. *Suncook Mills, supra*, 98.

Liability to the plaintiff as in other cases arising out of the ownership of interests in land depends upon control, or the right to control, of the premises where the hazard exists. *Black* v. *Fiandaca*, 98 N. H. 33, and cases cited; Restatement, Torts, s. 368, s. 329, *comment* a. There can be no doubt upon the evidence that the defendants Roy were in possession and control of the leased premises from October, 1946, to the date of the accident. The defendant company however correctly contends that it had no such control as would subject it to liability to the plaintiff. There was no evidence that it had any part either in the creation of the cement areaway on the lot in question or in the elevation of the cement walk which gave rise to the risk. At no time during the existence of the risk did it have possession or the right to possession of the land. In every instance a new lease was granted before the prior lease expired. No interval of time between leases occurred. Under these circumstances the defendant company cannot be held to have owed any duty to the plaintiff or to be chargeable upon her writ. *Zolezzi* v. *Bruce-Brown*, 243 N. Y. 490; *Cunningham* v. *Rogers*, 225 Pa. 132. In the language of the *Zolezzi* case (*pp.* 498, 499): "A landlord who parts only with a right to future control of a nuisance for which he is then not responsible, and of which he is not informed, commits no wrong to the public, and from his act no inference can arise that he either authorized its continuance or intended to profit thereby. If thereafter those in actual control of the nuisance choose to continue it, he has not by wrongful act . . . contributed to their wrong, and may not be held for damages to others caused thereby."

*Bixby* v. *Thurber*, 80 N. H. 411, relied upon to establish the company's liability is not applicable. There the nuisance complained of arose from a condition created by the landowner whose liability was held to continue after the property was leased. In these cases the defendant company has never been in control of the premises during the existence of the alleged nuisance and has never had a present right of control. *Cf. Perkins* v. *Weibel*, 132 Conn. 50.

We do not consider that such a right arose out of the provisions of the leases given since 1926. Each of these, including the lease to the defendants Roy, contains conditions providing in substance

that "outbuildings and structures" shall be "erected" on such places as the lessor shall direct, and that "no nuisances shall be allowed upon the premises" and no "structures or erections" placed on the lot "so as to annoy or injure persons occupying adjoining lots." A right of reentry is reserved for violation of these conditions. It is apparent from the language used, and from references made to the original lease to the company, that these conditions were not intended to confer rights upon the company with respect to the location of a pavement on the lot, or with respect to "allowance" of the type of nuisance involved in these cases.

In the action against the defendant company, the nonsuit was properly granted.

In the action against the Roys there must be a new trial. For this reason it becomes necessary to consider exceptions taken to the receipt of certain evidence relating to the location of the easterly boundary of the leased lot. The plaintiff offered in evidence a plan of the land leased by the town to the company in 1898, which was referred to in the lease, and recorded with it. She also offered in evidence a second plan, recorded in 1908, showing a layout of lots upon the leased land. It further appeared that in 1933 the town conveyed to the State "certain beach and highway land" the westerly boundary of which was described by metes and bounds with references to monuments located on the land. In the area in question the tract so conveyed was bounded on the west "by property now or formerly of the Hampton Beach Improvement Company."

A surveyor called as a witness by the plaintiff testified that according to the layout of the lots the easterly line of the lot in question was about three and one-half feet east of the westerly side of the walk, but according to the line established by the deed to the State was only three-fourths to one inch east of the westerly side. His testimony concerning the original line was received over objection and exception, as was his opinion that the former line was the true line. He conceded that he had never surveyed the original line as shown by the plan accompanying the 1898 lease.

Neither the subleases of the lot, nor the 1908 plan of the layout of lots referred to any monument which would enable a surveyor to locate the easterly boundary of the lot upon the ground, and the witness' testimony did not serve to relate the boundary to any monument established by deed or plan. He had however

surveyed "the whole area and establish[ed] the whole framework of the subdivision" at which time he had established the corners of certain lots. While the accuracy of the methods then used was not clearly established by his testimony, his acquaintance with the area in question was such that his knowledge could be found of probable aid to the jury (*State* v. *Killeen*, 79 N. H. 201; *Dowling* v. *Shattuck*, 91 N. H. 234, 236), and his testimony concerning the location of the original line was properly received in the Court's discretion. *Cf. Draper Company* v. *Pitman*, 97 N. H. 1. The exceptions to the rulings on evidence are overruled.

*New trial in the action against the Roys; exception overruled in the action against the company.*

All concurred.